**O'MELVENY & MYERS LLP**
RANDALL W. EDWARDS (S.B. #179053)
redwards@omm.com
Two Embarcadero Center
28th Floor
San Francisco, CA  94111
Telephone:   (415) 984-8700
Facsimile:    (415) 984-8701

DANIELLE N. MORRIS (S.B. #246295)
dmorris@omm.com
VY N. MALETTE (S.B. #341898)
vnguyen@omm.com
610 Newport Center Drive
17th Floor
Newport Beach, CA  92660-6429
Telephone:   (949) 823-6900
Facsimile:    (949) 823-6994

REBECCA A. GIROLAMO (S.B. #293422)
rgirolamo@omm.com
400 South Hope Street
Los Angeles, CA  90071-2899
Telephone:   (213) 430-6000
Facsimile:    (213) 430-6407

*Attorneys for Defendant Vanguard Marketing Corporation*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YRASEMA ORTIZ, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VANGUARD MARKETING CORPORATION,<br><br>Defendant. | Case No. 22-CV-01685 L JLB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF VANGUARD MARKETING CORPORATION'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>[Notice of Motion and Motion; Declaration of Nichole Lobodzinski; Declaration of Randall W. Edwards; Request for Judicial Notice; and [Proposed] Order Filed Concurrently]<br><br>Judge: Hon. M. James Lorenz<br>Courtroom: 5B<br>Hearing Date: February 27, 2023<br>Time: 10:30 AM<br><br>**PURSUANT TO LOCAL RULE NO ORAL ARGUMENT** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 1

       1.   Vanguard's Voice Verification Technology. .................... 2

       2.   Plaintiff. ................................................................ 4

ARGUMENT ....................................................................................................... 5

I.    PLAINTIFF  LACKS CONSTITUTIONAL STANDING TO BRING HER CLAIM, WHICH MUST BE DISMISSED UNDER RULE 12(B)(1), BECAUSE PLAINTIFF IS NOT AN ACCOUNTHOLDER AND VANGUARD NEVER CREATED A VOICEPRINT ASSOCIATED WITH HER. .................................. 5

II.   PLAINTIFF'S CLAIM MUST BE DISMISSED UNDER RULE 12(B)(6). ................................................................ 6

    A.   Plaintiff's claim must be dismissed because California Penal Code Section 637.3 does not prohibit the use of voiceprint technology to authenticate callers' identity .............. 6

       1.   Section 637.3's plain language regulates "voice prints" only if they are recorded or analyzed as "voice stress patterns" for lie detection ............................ 7

       2.   Section 637.3's legislative history confirms the statute does not regulate the use of voiceprints for personal identification. .................................. 10

       3.   Extending Section 637.3 to voice-based identification is not reasonable and would lead to a harmful result that the Legislature never intended ........ 12

       4.   Plaintiff does not plausibly allege that Vanguard records or examines voice stress patterns for purposes of lie detection ................................. 13

    B.   Plaintiff does not plead that Vanguard's conduct took place "in this state," as is required to state a claim under Section 637.3. ................................................ 16

    C.   Plaintiff's claim is time-barred by CIPA's statute of limitations. ......................................................... 18

CONCLUSION ................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bassett v. ABM Parking Servs., Inc.*,
883 F.3d 776 (9th Cir. 2018) ............................................................. 5, 6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................ 15

*Brennon B. v. Superior Ct.*,
13 Cal. 5th 662 (2022) .......................................................................... 7

*California Sch. Emps. Ass'n v. Kern Cmty. Coll. Dist.*,
41 Cal. App. 4th 1003 (1996) .............................................................. 9

*Colony Cove Properties, LLC v. City Of Carson*,
640 F.3d 948 (9th Cir. 2011) ............................................................. 16

*Diamond Multimedia Systems, Inc. v. Superior Court*,
19 Cal. 4th 1036 (1999) ................................................................ 17, 18

*Equilon Enterprises v. Consumer Cause, Inc.*,
29 Cal. 4th 53 (2002) ......................................................................... 10

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) ....................................................................... 19

*Gladstone v. U.S. Bancorp*,
811 F.3d 1133 (9th Cir. 2016) ........................................................... 10

*Grafton Partners v. Superior Ct.*,
36 Cal. 4th 944 (2005) ......................................................................... 8

*Halbert's Lumber, Inc. v. Lucky Stores, Inc.*,
6 Cal. App. 4th 1233 (1992) .............................................................. 13

*Heien v. North Carolina*,
574 U.S. 54 (2014) ............................................................................ 8-9

*Johnson v. Riverside Healthcare Sys., LP*,
534 F.3d 1116 (9th Cir. 2008) ............................................................. 6

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006) ......................................................................... 18

*Morrison v. Amway Corp.*,
323 F.3d 920 (11th Cir. 2003) ............................................................. 5

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) .......................................................... 6, 19

DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES ISO MOTION TO DISMISS

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ................................................................. 6

*People v. Trevino*,
26 Cal. 4th 237 (2001) ......................................................................... 17

*Russello v. United States*,
464 U.S. 16 (1983) ............................................................................... 17

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ............................................................... 5

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ............................................................................... 5

*United States v. Corinthian Colls.*,
655 F.3d 984 (9th Cir. 2011) ............................................................... 16

*United States v. Williams*,
553 U.S. 285 (2008) ............................................................................... 8

*Warth v. Seldin*,
422 U.S. 490 (1975) ............................................................................... 5

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) ............................................................... 5

*Wilson v. Craver*,
994 F.3d 1085 (9th Cir. 2021) ....................................................... 14, 16

**Statutes**

Cal. Bus. & Prof. Code § 22947.4(b) ......................................................... 9

Cal. Civ. Code § 1798.125(a)(1)(B) ........................................................... 9

Cal. Civ. Proc. Code § 340 ...................................................................... 18

Cal. Fin. Code § 4057(a) .......................................................................... 13

Cal. Penal Code § 502(a) .......................................................................... 12

Cal. Penal Code § 636(a) ............................................................................ 9

Cal. Penal Code §§ 630-638 ..................................................................... 17

**Other Authorities**

California Invasion of Privacy Act, A.B. 860, Cal State Assemb. (1967) ............... 10

DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES ISO MOTION TO DISMISS

# TABLE OF AUTHORITIES
(continued)

                                                                          **Page(s)**

MERRIAM-WEBSTER, *available at* https://www.merriam-
webster.com/dictionary/other (last visited Oct. 16, 2022) .....................................8

Voice Stress Analyzers, A.B. 2798, Cal. State Assemb. (1978) .............................10

**Rules**

Rule 12(b)(1)...........................................................................................................1

Rule 12(b)(6)...........................................................................................................6

**Regulations**

16 C.F.R. § 681.1(d) ..............................................................................................13

DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES ISO MOTION TO DISMISS

# **INTRODUCTION**

Plaintiff Yrasema Ortiz makes a series of unsubstantiated allegations that Vanguard Marketing Corporation ("Vanguard") violated California Penal Code § 637.3 by using voice verification technology.  This dearth of plausible factual support is not surprising; this action is one of eight nearly identical complaints filed by counsel in the Southern District of California against numerous financial services firms in which various plaintiffs seek to stretch an inapposite decades-old statute that has never been applied in an effort to obtain a statutory damage windfall.  Compl. ¶ 23.  In this action, Plaintiff attempts to do so, in part, by insisting in conclusory terms that Vanguard uses its voice verification technology as a lie-detection device that violates the statute's prohibition on recording or examining "voice prints or other voice stress patterns . . . to determine the truth or falsity of statements" without prior written consent.  Cal. Penal Code § 637.3(a).

Plaintiff's theory is both unsupported by the facts she cites in the Complaint and entirely ignores Section 637.3's express statutory language and all of the statute's legislative history.  Accordingly, the Complaint must be dismissed for the following reasons:

*First*, Plaintiff has not suffered any concrete injury, as required under both Article III and the statute at issue.  Ms. Ortiz has never had an account with Vanguard, could not have had a voiceprint created by Vanguard's voice verification technology, and therefore could not have been injured—facts that this Court can and should consider in determining Plaintiff's standing under Rule 12(b)(1).

*Second*, Section 637.3 does not, and was never intended to, regulate voice verification technology.  In 1978, to address concerns about "pseudoscientific" handheld lie detectors that purported to detect lies based on a speaker's voice stress patterns, the California Legislature added Section 637.3 to the California Invasion of Privacy Act ("CIPA").  *See infra* II.A.2.  Consistent with the Legislature's stated concerns, Section 637.3 regulates the analysis of "voice prints or other voice stress

patterns . . . to determine the truth or falsity of statements."  By its plain text, the statute governs the use of technology "to determine the truth or falsity of statements"—not to identify speakers.  This comports with the legislative history, which uniformly shows the Legislature's intent to limit the nonconsensual use of lie detectors.  Not a single word in the statutory text or the legislative history makes even a passing reference to restricting the use of voiceprints to verify identities.

Plaintiff's unsupported interpretation of Section 637.3 as applying to voice verification technology would produce perverse results.  Voice verification technology is not only beneficial to the public, but is also a valuable means of complying with federal and state laws that require financial institutions to create and maintain stringent privacy protections for consumers.  Requiring prior express written consent and imposing massive liability on entities for the use of such technology would effectively deter its adoption and produce harmful results—less security and higher risk of fraud for accountholders nationwide.  Nothing in the statutory language or legislative history indicates that the Legislature intended such consequences.

***Third,*** Plaintiff's claim fails because Section 637.3 prohibits only conduct that took place "in this state," and Plaintiff does not (and could not) allege that the personnel, servers, and systems that operate Vanguard's voice verification technology are in California.

***Finally***, Plaintiff's claim is time-barred by CIPA's one-year statute of limitations and should be dismissed.

For these reasons, Plaintiff's claim fails and should be dismissed in its entirety.

## **BACKGROUND**

### **1.    Vanguard's Voice Verification Technology.**

Vanguard is a leading investment company that routinely receives customer calls discussing sensitive identification and financial information.  Vanguard must

therefore comply with its obligations under both state and federal laws to create and maintain rigorous privacy protections in order to keep consumers' information secure. As a result, Vanguard is hypersensitive to the risk of fraud and identity theft. It safeguards its account holders' important personal information by employing a robust security program, including via encryption, automated security alerts, and multifactor and live agent authentication.

Vanguard Voice Verification ("Vanguard Voice Verification" or "Voice Verification") is a valuable component of this comprehensive security regime. As described on the Vanguard Voice Verification webpage, which the Complaint repeatedly cites and relies on, Vanguard's technology offers "[a]nother layer of account security" that provides accountholders "safer and faster account access." Declaration of Randall W. Edwards ("Edwards Decl.") Ex. A at 3. Voice Verification is available only to Vanguard account holders, who choose to opt in to the program and "must first set up the voice verification feature" by "record[ing] a passphrase" from which the system "learns [the account holder's] voice [and] creates [a]"voiceprint" to identify the "unique patterns" of that person's voice. *See* Compl. ¶¶ 21-25; Edwards Decl. Ex. A at 4. Once enrolled, Voice Verification will confirm an incoming caller's identity by comparing the sound of the caller's live voice repeating the passphrase to the "recorded passphrase" in the voiceprint on file. *See* Edwards Decl., Ex. A at 3. This system not only authenticates account holders using their respective voiceprints—i.e. unique audio "fingerprint[s]"—it also helps Vanguard meet its legal obligations to protect its account holders' privacy using fraud-prevention measures. *See id.*, Ex. A at 4.

Plaintiff's Complaint recognizes that Voice Verification confirms a caller's identity. *See, e.g.,* Compl. ¶¶ 3, 21, 22, 35. But Plaintiff also asserts, without factual allegations to support, that the technology "determine[s] truth or falsity of statements," Compl. ¶ 28, and is, therefore, "very similar to a Polygraph Test," Compl. ¶ 29. *See also, e.g.*, Compl. ¶¶ 2, 3, 24, 30. Both Plaintiff's Complaint and

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

the Voice Verification webpage that Plaintiff cites throughout the Complaint are devoid of any suggestion that Vanguard uses the technology to determine the truth or falsity of callers' statements.[1]

Finally, despite repeatedly quoting the Voice Verification webpage notifying potential callers about that program, Plaintiff alleges that she "did not know that [Vanguard] surreptitiously examined [her] voice because [Vanguard] did not tell [her] or seek consent." *Id*. ¶¶ 21, 22, 23, 40.

## 2.    Plaintiff.

Plaintiff does not allege that she is a Vanguard account holder; indeed, she is not. *See id.* ¶ 8; Declaration of Nichole Lobodzinski ("Lobodzinski Decl.") ¶¶ 4-6. She alleges only that she called Vanguard "over the last couple years," "spoke[] with representatives on the telephone," and that Vanguard "created voice prints" associated with her. Compl. ¶¶ 31-33. Plaintiff does not allege the time, date, or manner of any calls with Vanguard, or that any of these alleged calls occurred in the statutory limitations period. Plaintiff notably fails to allege when any purported voiceprint was created (presumably because, as a non-account holder, Plaintiff was never enrolled in Voice Verification and Vanguard never created a voiceprint associated with her). *See* Lobodzinski Decl. ¶ 6.

---

[1] The Complaint recites generic "audible indications" of lying—including "(1) change in breathing (2) repeating words or phrases (3) difficulty speaking (4) change in speech patterns (5) unusual rise or fall in vocal tone (6) odd inflection (7) context of use of contractions (8) lack of use of personal pronouns (9) using a high-pitched voice (10) sudden change of volume (11) using phrases such as 'I want to be honest with you,' 'honestly' or 'let me tell you the truth' (12) using words such as 'uh,' 'like' and 'um' and (13) slip-ups and corrections that can indicate a caller is not being truthful"—are untethered to any allegations about Vanguard's conduct. *See id.* ¶ 27. The Complaint does not allege that Vanguard's technology assesses callers' use of any of these alleged "indications" of lying. Rather, Plaintiff's counsel repeated this cookie-cutter language verbatim in other complaints filed against various financial services companies.

DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES ISO MOTION TO DISMISS

# ARGUMENT

## I. PLAINTIFF LACKS CONSTITUTIONAL STANDING TO BRING HER CLAIM, WHICH MUST BE DISMISSED UNDER RULE 12(B)(1), BECAUSE PLAINTIFF IS NOT AN ACCOUNTHOLDER AND VANGUARD NEVER CREATED A VOICEPRINT ASSOCIATED WITH HER.

Article III standing is a "threshold question in every federal case" because a lack of standing deprives courts of subject-matter jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish standing, a plaintiff bears the burden of showing that: (1) she has suffered an injury in fact that is concrete and particularized; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776, 779 (9th Cir. 2018). "An injury in fact is 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.*

Under Federal Rule of Civil Procedure 12(b)(1), a defendant can bring either a facial or factual challenge to subject-matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A factual attack may dispute the truth of allegations that on their face would suffice to confer federal jurisdiction. *See Morrison v. Amway Corp.*, 323 F.3d 920, 930 (11th Cir. 2003); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual challenge, the court can review evidence beyond the complaint without converting the motion to dismiss into one for summary judgment. *Safe Air for Everyone*, 373 F.3d at 1039. A plaintiff opposing such an evidentiary challenge "must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.*

Here, Plaintiff has not suffered an injury in fact sufficient to confer standing because Vanguard never created a voiceprint of Plaintiff. Plaintiff is not an accountholder of Vanguard and thus has never been eligible for participation in Voice Verification. Lobodzinski Decl. ¶ 6. Though Plaintiff alleges that she called

1  Vanguard and spoke with a representative "[o]ver the last couple years" and that

2  Vanguard "created [her] voice print" and "input [her] voice print into its biometric

3  voice print database," Compl. ¶¶ 31-34, Vanguard's business records show that

4  Plaintiff is not a Vanguard accountholder and never had a voiceprint created.

5  Lobodzinski Decl. ¶ 6.

6      Because Plaintiff was never exposed to the conduct that forms the basis for

7  her claim, she has not suffered the concrete injury required for standing under

8  Article III.  *See Bassett*, 883 F.3d at 779.  For this same reason, she also lacks

9  statutory standing to bring her claim under Section 637.3(c), which entitles one to

10  bring such a claim only if she has been "injured" by the alleged violation.

11      The Complaint must therefore be dismissed in its entirety.

12  **II.    PLAINTIFF'S CLAIM MUST BE DISMISSED UNDER RULE 12(B)(6).**

13

14      Dismissal under Rule 12(b)(6) is proper where there is "no cognizable legal

15  theory" or "an absence of sufficient facts alleged to support a cognizable legal

16  theory."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "[F]or a complaint

17  to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable

18  inferences from that content, must be plausibly suggestive of a claim entitling the

19  plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

20  Although the court must assume the truth of all factual allegations, it must dismiss

21  any claim that fails to "allege sufficient facts to state the elements of [a] claim."

22  *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008).

23      **A.    Plaintiff's claim must be dismissed because California Penal Code Section 637.3 does not prohibit the use of voiceprint technology to**

24      **authenticate callers' identity.**

25      Plaintiff's sole cause of action arises under Section 637.3(a) of the California

26  Penal Code, but the statute does not prohibit the use of voiceprint technology as

27  Plaintiff contends.  The statute prohibits using "any system which examines or

28  records in any manner voice prints or other voice stress patterns of another person

*to determine the truth or falsity of statements made by such other person* without his or her express written consent given in advance of the examination . . . ." (emphasis added). It does not prohibit the use of voiceprint technology for anti-fraud purposes such as authenticating callers' identity, and thus Plaintiff's claim must be dismissed.

To analyze a statute's scope, a court's "fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose." *Brennon B. v. Superior Ct.*, 13 Cal. 5th 662, 673 (2022). A court must "first examine the statutory language, giving it a plain and commonsense meaning. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend." *Id.* If the "statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." *Id.*

Here, the plain language and legislative history of Section 637.3 both negate Plaintiff's push to regulate the use of voiceprint-related technology for identification purposes. As discussed in detail below, California's Legislature enacted Section 637.3 in 1978, in response to press reports about handheld voice stress analyzers then being marketed to private citizens as amateur lie-detection devices. Consistent with that focus, the statute's plain text regulates "voice prints" only to the extent they constitute a type of "voice stress pattern" used to "determine the truth or falsity of statements"—not if they are used for personal identification. Cal. Penal Code § 637.3(a). Plaintiff does not, and could not, plausibly allege facts that would establish that Vanguard used Voice Verification to analyze "voice stress patterns" to determine the truth or falsity of any statement. Her claim therefore fails as a matter of law.

**1.    Section 637.3's plain language regulates "voice prints" only if they are recorded or analyzed as "voice stress patterns" for lie detection.**

The plain text of Section 637.3 precludes the use of a "system" that

-7-

"examines or records" "voice stress patterns," whether from voiceprints or otherwise, without express written consent only for the purpose of "determin[ing] the truth or falsity of statements." But the Complaint's factual allegations claim that Vanguard used voiceprints not as a form of voice stress-based lie detection but as a means of identification. Compl. ¶¶ 21-23. Accordingly, the Complaint does not, and cannot, plausibly allege any facts that meet the statute's terms.

Section 637.3's scope is narrow: it is limited to the analysis of voice stress patterns. The statute regulates "system[s]" that record or examine an individual's "voice prints or *other* voice stress patterns" to "determine the truth or falsity of statements." *Id.* (emphasis added). Under the associated-words canon (*noscitur a sociis*), the meaning of the phrase "voice prints" is "given more precise content by the neighboring words with which it is associated." *United States v. Williams*, 553 U.S. 285, 294 (2008); *see also Grafton Partners v. Superior Ct.*, 36 Cal. 4th 944, 960 (2005). That includes the phrase that immediately follows: "*or other* voice stress patterns." The adjective "other," meaning "additional" or "different," implies that the preceding phrase, "voice print," refers to one type of "voice stress pattern." *Other*, Merriam-Webster, *available at* https://www.merriam-webster.com/dictionary/other (last visited Oct. 16, 2022). This accords with basic logic: it would be nonsensical for the Legislature to refer to "other voice stress patterns" unless it intended "voice prints" to describe one kind of "voice stress pattern." The phrase "other voice stress patterns" thus confirms that the Legislature sought to regulate voiceprints in a single, limited capacity—to detect lies based on voice stress patterns, as various devices purported to do when the statute was enacted. *See infra* at 10-12. It did not limit the use of voiceprints for other purposes like personal identification.

The Supreme Court's decision in *Heien v. North Carolina*, 574 U.S. 54, 67-68 (2014)—a Fourth Amendment case involving a traffic stop over a single working brake light—further illustrates the point. In *Heien*, at issue was a North

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

1    Carolina statute stating that a car's "stop lamp may be incorporated into a unit with

2    one or more *other rear lamps*." *Id.* (emphasis added).  The court concluded that

3    the "use of 'other' suggests to the everyday reader of English that a 'stop lamp' is a

4    type of 'rear lamp.' " *Id.*

5        Numerous statutes use the same construction, emphasizing one specific

6    statutory application by expressly identifying that application and then using the

7    phrase "or other" to introduce the broader category to which that application

8    belongs.  *See, e.g.*, Cal. Bus. & Prof. Code § 22947.4(b) (permitting installation of

9    software on consumer computer for the "prevention of . . . *fraudulent or other*

10   *illegal activities*"); Cal. Penal Code § 636(a) (prohibiting eavesdropping on a

11   person in custody of "a *law enforcement officer or other public officer*"); Cal. Civ.

12   Code § 1798.125(a)(1)(B) (prohibiting price discrimination through "use of

13   *discounts or other benefits*") (emphases added).  As those statutes illustrate, the

14   specific example preceding "or other" falls in the same category as the general

15   category that follows:  "fraudulent" activities are a kind of "illegal activity," a "law

16   enforcement officer" is a kind of "public officer," and a "discount" is a kind of

17   "benefit."  Likewise, here, the word "other" demonstrates that Section 637.3 uses

18   the term "voice print" as a kind of voice stress pattern.  That "plain and

19   commonsense meaning" controls this case and rules out Plaintiff's attempt to

20   extend section 637.3 to voice verification technologies that do not assess voice

21   stress patterns for purposes of lie detection.

22       This reading of "voice print" also comports with "the context of the statutory

23   framework as a whole."  *See California Sch. Emps. Ass'n v. Kern Cmty. Coll. Dist.*,

24   41 Cal. App. 4th 1003, 1011 (1996).  Section 637.3 prohibits the use of voiceprints

25   and other types of voice stress patterns only when used for one purpose:  "to

26   determine the truth or falsity of statements."  Cal. Penal Code § 637.3(a).  But, by

27   its own terms, the statute does not apply where voiceprints and other voice stress

28   patterns are analyzed for other purposes.  As explained further below, that statutory

DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES ISO MOTION TO DISMISS

1    limit aligns with the Legislature's objective to regulate the use of "pseudoscientific"

2    lie-detection devices popular in the late 1970s.  More importantly, the statutory

3    language reinforces the interpretation of Section 637.3 as regulating voiceprint

4    "stress patterns" used for lie detection, not barring voice verification tools used for

5    personal identification.

###    2.    Section 637.3's legislative history confirms the statute does not regulate the use of voiceprints for personal identification.

8        The clear statutory language does not require one to resort to the statute's

9    legislative history to dismiss Plaintiff's claims, *Gladstone v. U.S. Bancorp*, 811

10   F.3d 1133, 1138 (9th Cir. 2016), but, even so, the "available legislative history

11   buttresses [the] conclusion."  *Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal.

12   4th 53, 61 (2002).  And Section 637.3's legislative records show a resolute intent to

13   regulate voice stress analysis as dubious lie-detection technology.  The legislative

14   history contains not a single word disclosing an attempt to restrict the use of

15   voiceprints for purposes of personal identification.

16       In 1978, eleven years after CIPA's original 1967 enactment, Section 637.3

17   was enacted.  *See* Voice Stress Analyzers, A.B. 2798, Cal. State Assemb. (1978);

18   California Invasion of Privacy Act, A.B. 860, Cal State Assemb. (1967).  The bill's

19   title ("Voice Stress Analyzers") reflects a concern with news reports at the time—

20   including articles in the files of the Assembly Republican Caucus—documenting

21   the increased adoption of personal handheld lie-detection technologies that

22   purported to analyze voice stress patterns to determine whether someone was telling

23   the truth.  *E.g.*, Edwards Decl., Ex. B, Legislative History, California Assembly Bill

24   2798 (1978), at 33 ("Who Knows?  The Hagoth Knows!" news article); *id*. at 34

25   ("Close Encounters of a Fourth Kind" news article).  In a letter urging Governor

26   Brown to sign AB 2798, the bill's sponsor, Assemblyman Lehman, explained that

27   the bill was necessary because "[t]here must be strict statutes regarding the use of

28   these modified lie detectors by private citizens."  *Id.*, Ex. B, Legislative History,

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

California Assembly Bill 2798 (1978), at 22 (Lehman's letter to Governor Brown dated August 31, 1978).  Lehman continued:

> Because of the fact that there are no current regulations for these modified lie detectors, the equipment is being used by amat[eur]s without prior consent from the people they record and analyze.  This is a clear invasion of privacy and a dangerous precedent."

*Id*.

The same focus on stress evaluation and lie detection is evident in the Enrolled Bill Memorandum for AB 2798, which observed that voice-based lie detectors threatened coercion in employment settings and that the bill sought to regulate *voice stress analysis* specifically:

> Existing law prohibits employers from demanding or requiring that any employee or any applicant . . . submit to or take a test involving psychological stress evaluators, including polygraphs, lie detectors or similar tests or examinations, as a condition of employment . . . but does not prohibit employers or others from *utilizing a psychological stress evaluator to analyze voice prints or other voice stress patterns* of a person to determine the truth or falsity of statements made by such person. . . .

*Id*. at 17 (emphasis added).

Similarly, a memorandum from the Senate Committee on the Judiciary voiced concern about the "use of psychological stress evaluators to analyze voice prints," explaining that such devices "have been used in the same manner as polygraphs" and highlighting expert testimony that such "analyzer[s] cannot differentiate between stress resulting from lying and that resulting from some other cause."  *Id*. at 37-38.  The memorandum summarized:  "The purpose of the bill is to limit the abuse of voice stress analyzers."  *Id*. at 37.  When ultimately codified in September 1978, AB 2978 was entitled "Voice Stress Analyzers," and described as "[a]n act to add Section 637.3 to the Penal Code, relating to voice stress analyzers."  *Id*. at 12.

These are just some of the many examples from the legislative history whose

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

exclusive focus is the use of voice stress analysis as a lie detection technology.[2] Nothing in that legislative history suggests an intent to regulate voiceprints as an identification technology.

The legislative history's single-minded focus confirms the only natural reading of the statutory text as regulating the examination of "voice prints or other voice stress patterns . . . to determine the truth or falsity of statements." Cal. Penal Code § 637.3(a). By its unambiguous terms, the statute regulates the use of voiceprint "stress patterns" analyzed for lie detection—or, as several legislative memoranda put it in 1978, the use of "a psychological stress evaluator to analyze voice prints" for lie detection. Edwards Decl., Ex. B at 37. And Plaintiff acknowledges the Legislature's objective to regulate lie-detection technology, asserting that the "California Legislature chose to regulate" systems "very similar to a Polygraph Test." Compl. ¶ 29.

### 3. Extending Section 637.3 to voice-based identification is not reasonable and would lead to a harmful result that the Legislature never intended.

The statutory text and legislative history of Section 637.3 are dispositive; however, expanding the statute to regulate voiceprint-based identification technology and effectively prohibiting its use for anything other than lie detection is inconsistent with the overarching legislative goal of ensuring that financial services firms protect consumers' private financial information against fraud and identity theft.[3]

---

[2] *See also, e.g.*, Edwards Decl., Ex. B at 22 (Agriculture & Services Enrolled Bill Report ("Would prohibit the use of systems that interpret the human voice in such a way as to act as a lie detector. . . .")); *id.* at 49 (Senate Democratic Caucus Memorandum ("Subject: Voice Stress Analyzers. . . . . Existing law . . . does not prohibit employers or others from utilizing a psychological stress evaluator to analyze voice prints")); *id.* at 21 (Department of Finance Enrolled Bill Report ("requires written consent before voice stress analysis may be used")); *id.* at 58 (Mandated Cost Estimate ("TITLE: Use of Voice Stress Analyzers")); *id.* at 35 (Ways and Means Staff Analysis ("Subject: Voice Stress Analyzer")).
[3] *See, e.g.*, Cal. Penal Code § 502(a) (prohibiting unauthorized computer access in

Plaintiff's novel reading of Section 637.3 would stifle the ability of these firms to add helpful layers of security—through voice verification technology—to further protect consumer accounts.  Section 637.3 requires written consent before the use of a system that examines or records "voice prints or other voice stress patterns."  Cal. Penal Code § 637.3(a).  Under Plaintiff's interpretation, every *fraudster* would have a claim under Section 637.3 because financial services firms and other companies would not have obtained the *fraudster's* prior written consent to examine his or her voice using such technology.  Faced with the absurd threat of liability for using their security technology against fraudsters, these companies would not be able to operate voice-recognition systems in California.  Nor could they, as a practical matter, determine whether a call is even coming from California (in a world in which individuals live in California but have out-of-state cell phone numbers) and thus is subject to Section 637.3.  The end result: companies would abandon the use of such technology and consumers nationwide would be deprived of that additional safeguard against fraud and identity theft.  There is no reason to believe that the California Legislature intended this harmful policy outcome in 1978, when it enacted a statute narrowly regulating the use of pseudoscientific lie-detection technologies popular at that time.  *See Halbert's Lumber, Inc. v. Lucky Stores, Inc.*, 6 Cal. App. 4th 1233, 1239 (1992) (courts must interpret a statute to make its language "workable and reasonable … in accord with common sense and justice, and to avoid an absurd result") (internal citations omitted).

### 4. Plaintiff does not plausibly allege that Vanguard records or examines voice stress patterns for purposes of lie detection.

The Complaint is devoid of any factual allegations that Vanguard recorded or

---

part because "protection of the integrity of . . . computer data is vital to the protection of the privacy of individuals as well as to the well-being of financial institutions"; Cal. Fin. Code § 4057(a) (prohibiting the negligent disclosure of nonpublic personal information in specified circumstances); *see also* 16 C.F.R. § 681.1(d) (requiring financial institutions and others to implement a program "designed to detect, prevent, and mitigate identity theft").

-13-                                   DEFENDANT'S MEMORANDUM OF POINTS
                                       AND AUTHORITIES ISO MOTION TO DISMISS

examined voiceprints to analyze voice stress for lie detection purposes. In fact, the Complaint's only non-conclusory factual allegations allege that Vanguard Voice Verification is an identity-verification tool beyond the reach of Section 637.3. *See, e.g.*, Compl. ¶¶ 3, 35 (alleging Vanguard examines voiceprints to "determine the true identity of Plaintiff"); Edwards Decl., Ex. A at 4.

Plaintiff seesaws between plausibly alleging facts that demonstrate that Vanguard Voice Verification is a personal identification tool and claiming in conclusory terms that the technology is also a lie-detection tool based on voice stress patterns. Plaintiff alleges, for example, that Vanguard creates "biometric voice prints," Compl. ¶ 1, which allows it to "to recognize[] consumers' identities" using "voice recognition software that creates a biometric voiceprint of each caller." See *id.* ¶¶ 3, 26. Voiceprint creation, according to the Complaint, "requires extracting an individual's phonetic features (including their unique speech patterns, tones, and other characteristics) from their voice." *Id.* ¶ 18. "As such, a voice print serves as an audible 'fingerprint' which can directly identify an individual and can even reveal the speaker's behavioral traits." *Id.* ¶ 18. Likewise, Plaintiff directly quotes Vanguard's Voice Verification webpage, which explains that the technology can "[v]erify your identity with the sound of your voice," "confirm[] your identity when you call by comparing your voice," and "uses sophisticated biometric technology to identify the unique patterns of your voice." *Id.* ¶ 21-23; Edwards Decl., Ex. A at 3.

Presumably, understanding that these allegations cannot establish a violation of Section 637.3, Plaintiff parrots the statute's language with contradictory and conclusory assertions that Vanguard uses its voice verification technology to detect lies based on voice stress patterns. But for two additional reasons, these allegations do not state a violation of Section 637.3 and are instead "legal conclusions couched as factual allegations" that this Court cannot accept as true. *Wilson v. Craver*, 994 F.3d 1085, 1090 (9th Cir. 2021).

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

First, Plaintiff does not allege that verifying identity using a caller's voice requires a determination as to the truth or falsity of a statement, nor does she allege a single statement whose truth or falsity Vanguard Voice Verification would have determined.  The closest she comes is to make conclusory assertions that Vanguard uses "voice recognition software that creates a biometric voice print of each caller" to determine the truth or falsity of callers' self-identification.  *See* Compl. ¶¶ 3 (using language of statute), 24 and 27 (using similar language).  Even if that suggestion were supported by plausible factual allegations (which it is not), it would not state a violation of Section 637.3 because confirming identity based on biometrics is not a form of lie detection based on analysis of voice stress patterns. Regardless, the Complaint contains no suggestion that Vanguard Voice Verification requires callers to make self-identifying statements at all, much less that such technology would recognize the substance of the speaker's words and could evaluate their truth or falsity.  (Nor could Plaintiff allege any such thing in good faith; the phrase from which voiceprints are created at Vanguard is "At Vanguard, my voice is my password"—a phrase of which Vanguard is obviously not assessing the truth or falsity.)  According to Plaintiff, Vanguard Voice Verification would operate without regard to the content of a caller's speech.  *Id.* ¶ 18.  It is equally plausible, on the face of the Complaint, that the technology would confirm callers' identities based on readings of sonnets or other arbitrarily selected material as it is that the technology would analyze callers' self-identifying statements for their truth or falsity.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (allegations "must be placed in a context that raises a suggestion" of illegality "not merely . . . conduct that could just as well be" lawful).

Second, Plaintiff's threadbare assertions that Vanguard operates its voice verification technology as lie-detection technology are directly contradicted by both the factual allegations elsewhere in the Complaint and the Vanguard website on which the Complaint is based, which is properly considered under the incorporation

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

by reference doctrine.  *See United States v. Corinthian Colls*., 655 F.3d 984, 999 (9th Cir. 2011).  The Complaint contains conclusory allegations that Vanguard Voice Verification is "very similar to a Polygraph Test," Compl. ¶ 29, creates voiceprints based on "stress patterns," *id.* ¶ 28, and analyzes various behavioral cues listed in the Complaint.  *Id.* ¶ 27.  These unsupported assertions—and the generic list of hypothetical ways to detect lies—stem from popular websites purporting to advise readers on behavioral and verbal indicia of lying.  *See id.* at 5 nn.4-5, 6 nn.6-7.  But Plaintiff does not and could not allege facts establishing that Vanguard Voice Verification actually uses any of those cues, nor do the cited articles suggest it.  Moreover, those conclusory allegations cannot be squared with Plaintiff's own detailed allegations or the Voice Verification webpage upon which the Complaint relies, which both describe the technology as an identification tool that compares the sound of a caller's voice reading a passphrase from one phone call to the digital representation of a recording of the customer's voice reading that same passphrase on a previous phone call; it would not measure shifting behavioral traits such as stress patterns.  *See, e.g.*, Compl. ¶ 26.  The Court should not accept implausible allegations directly at odds with Plaintiff's own description of Vanguard Voice Verification and "contradicted by documents referred to in the Complaint."  *Colony Cove Properties, LLC v. City Of Carson*, 640 F.3d 948, 957 (9th Cir. 2011).

In sum, the Complaint's mere repetition of a statutory element—analysis of voice stress patterns to determine the truth or falsity of some unspecified statement—is not sufficient to state a claim.  *See, e.g.*, *Wilson*, 994 F.3d at 1090 (conclusory statements cannot withstand motion to dismiss).

**B.    Plaintiff does not plead that Vanguard's conduct took place "in this state," as is required to state a claim under Section 637.3.**

Plaintiff's claim also fails because she does not allege facts that Vanguard created a system to examine or record her voice stress patterns *in California*.  By its

express terms, the statute requires that the proscribed conduct must occur "in this state," i.e., California:

> No person or entity in this state shall use any system which examines or records in any manner voice prints or other voice stress patterns of another person to determine the truth or falsity of statements made by such other person without his or her express written consent given in advance of the examination or recordation.

Cal. Penal Code § 637.3(a).  Nearly every other CIPA provision lacks equivalent limiting geographic language.  *See id.* §§ 630-638.  Including such a limit in Section 637.3 that is absent in most other CIPA provisions evidences a legislative intent to restrict the section's geographic reach to conduct occurring in California.  *See People v. Trevino*, 26 Cal. 4th 237, 242 (2001) ("When the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning."); *Russello v. United States*, 464 U.S. 16, 23 (1983) (where legislature "includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed [it] acts intentionally and purposely in the disparate inclusion or exclusion").  The plain meaning of the statute's phrasing—"no person or entity in this state shall use"— curbs its reach to California-based activity of a defendant.

The California Supreme Court has confirmed this conclusion by interpreting nearly identical statutory language to require that the *defendant's* relevant conduct occur in California.  *Diamond Multimedia Systems, Inc. v. Superior Court*, 19 Cal. 4th 1036 (1999).  The *Diamond* case involved a California statute making it "unlawful for any person, directly or indirectly, *in this state*" to engage in certain acts of securities-market manipulation, including making untrue statements of material facts to induce a purchase or sale of a security.  *Id*. at 1042.  Calling this language "very clear," the Court held that the phrase "in this state" required that the "*unlawful statement . . . is made in this state*," or "willfully disseminated" here,

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

because the phrase "in this state . . . prohibits commission of manipulative acts *in California*." *Id.* at 1048, 1052 (emphasis added).

The conduct regulated by Section 637.3 is the "use" of "any system which examines or records . . . voice prints or other voice stress patterns . . . to determine the truth or falsity of statements." Cal. Penal Code § 637.3(a). But Plaintiff does not—and could not—allege that Vanguard's conduct of "using" its voice verification technology happened in California.

Here, Plaintiff alleges a few things about California, but those allegations are not enough to trigger coverage under Section 637.3. Plaintiff alleges that Vanguard conducts business in California, *see* Compl. ¶ 10, and, inexplicably, that it has an office in "XXXXXXXX," *id.* ¶ 51.[4] Plaintiff further alleges that Vanguard used Voice Verification to "examine[] or record[]" the voices of customers who reside in California. *Id.* ¶ 7. But unless Vanguard operated the technology itself in California (which Plaintiff does not allege), any recording or examination of California customers' voices would amount to "a multistate event" of which just one part—"the . . . communication by the California resident—occurred *in California*." *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 119 (2006). By contrast, the use of any recording and examination system would remain "outside the state." *Id.* And because the statutory language expressly focuses on the *defendant's* conduct rather than the speaker's location, Plaintiff's failure to allege that Vanguard operated its voice verification technology "in this state" is fatal to her claim.

**C.    Plaintiff's claim is time-barred by CIPA's statute of limitations.**

Plaintiff's claim is also untimely. CIPA has a one-year statute of limitations, Cal. Civ. Proc. Code § 340; *Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020), and she did not file suit until October 26, 2022. Absent from the

---

[4] Plaintiff's failure to replace "XXXXXXXX" and identify any Vanguard office in California perfectly illustrates the cookie-cutter nature of this Complaint and the eight other complaints filed by Plaintiff's counsel.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

1   Complaint are any allegations that she called Vanguard during the limitations

2   period.  Instead, Plaintiff makes only a single, vague allegation that she called

3   "[o]ver the last couple years."  Compl. ¶ 24.  That is not enough to "plausibl[y]

4   suggest" that Plaintiff is entitled to relief.  *Moss*, 572 F.3d at 969.

5         The Complaint's attempt to circumvent the statute of limitations and invoke

6   the "delayed discovery" rule does not change this outcome.  *See Fox v. Ethicon*

7   *Endo-Surgery, Inc*., 35 Cal. 4th 797, 808 (2005) (to rely on rule, plaintiffs "must

8   specifically plead facts to show (1) the time and manner of discovery and (2) the

9   inability to have made earlier discovery despite reasonable diligence").  Plaintiff

10  alleges that she "did not know that [Vanguard] surreptitiously examined [her] voice

11  because [Vanguard] did not tell [her] or seek consent."  Compl. ¶ 40.  Plaintiff's

12  own allegations contradict these conclusory assertions.  In fact, her claim is

13  premised on Vanguard's Voice Verification webpage, which she cites in the

14  Complaint.  *See id.* ¶¶ 21-26.  Any allegation that she "did not know" how

15  Vanguard verifies customers' identities thus holds no water.  *Id.* ¶ 41.  And, in any

16  event, Plaintiff cannot have it both ways—she cannot bring a claim based wholly

17  on her review of this website while, at the same time, claiming the discovery rule

18  applies because she did not know or have reason to know about the publicly-

19  available information in it.

20        Nor has Plaintiff alleged any other facts plausibly showing that the delayed

21  discovery rule would otherwise apply.  She does not, for example, allege when or

22  how she discovered that Vanguard allegedly creates voiceprints, or why she did not

23  and could not have reasonably discovered those facts earlier.  As a result, Plaintiff

24  has not and cannot invoke the delayed discovery rule; the CIPA claim is thus barred

25  by the statute of limitations.

26                              **CONCLUSION**

27        For each of the foregoing independent reasons, the Court should dismiss

28  Plaintiff's Complaint against Vanguard in its entirety and with prejudice.

1

2   DATED:  January 27, 2023          Respectfully submitted,

3                                     O'MELVENY & MYERS LLP

4

5                                     By:  */s/ Randall W. Edwards*

6                                          Randall W. Edwards

7                                     *Attorney for Defendant Vanguard*
                                      *Marketing Corporation*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MEMORANDUM OF POINTS
                                                        AND AUTHORITIES ISO MOTION TO DISMISS